UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| MARLENE BOSSOUS, Petitioner, | 11 Civ. 5303 (DLC) 09 Cr. 978-01 |
| -v- | OPINION AND ORDER |
| UNITED STATES OF AMERICA, Respondent. | |

---

Appearances:

For Petitioner:
Marlene Bossous
Reg # 62777-054
FPC Alderson-Federal Prison Camp
Glen Ray Road Box- A
Alderson, VA 24910
PRO SE

For Respondent:
Andrea Lee Surratt
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007

DENISE COTE, District Judge:

Marlene Bossous ("Bossous") has filed a timely petition pursuant to 28 U.S.C. § 2255, challenging her sentence. She was sentenced principally to 70 months' imprisonment, the bottom of a stipulated guidelines range, following her entry of a plea of guilty to one of the four felony charges for which she had been indicted. For the following reasons, the petition is denied.

BACKGROUND

On October 14, 2009, Bossous was indicted for one count of conspiracy to commit wire and bank fraud under 18 U.S.C. § 1349, and three substantive counts of wire fraud under 18 U.S.C. § 1343. On April 8, 2010, she executed a written plea agreement in which she agreed to plead guilty to the charged conspiracy ("Agreement").

The Agreement contained a stipulation that the offense level for the Count One conspiracy was 27. The base level was enhanced through three adjustments for the amount of loss, number of victims and the defendant's role in the offense. Because the loss attributable to Bossous' conduct "exceeds $2,500,000 but is less than $7,000,000," the offense level was increased by 18 levels. Because the offense "involved 10 or more victims," it was increased by 2 levels. Anticipating a three-level adjustment for acceptance of responsibility, the parties agreed that the sentencing guidelines range would be 70 to 87 months' imprisonment. While either party could "seek a sentence outside the Stipulated Guidelines Range," the parties stipulated that neither would seek an upward or downward departure.

In addition, the Agreement contained the following waiver:

> It is agreed (i) that the defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or

> Section 2241, any sentence within or below the Stipulated Guidelines Range set forth above (70 to 87 months' imprisonment). . . . It is further agreed that any sentence within the Stipulated Guidelines Range is reasonable. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. . . .

The defendant pleaded guilty on April 8, 2010. During her plea allocution the following exchange occurred after the defendant identified her signature on the Agreement:

> THE COURT: Before signing this agreement, did you read it?
>
> THE DEFENDANT: Yes, your Honor.
>
> . . .
>
> THE COURT: When you signed it, did you think you understood the agreement?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: In this agreement there is a guidelines calculation. It's not binding on me but there is a calculation between the part[ies] that your guidelines range is 70 to 87 months in prison. Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Do you understand that by signing this agreement you have agreed that you will not appeal or challenge or litigate your sentence so long as I don't sentence you to more than 87 months in prison?
>
> THE DEFENDANT: Yes, your Honor.

The Presentence Report ("PSR") presented a different calculation of the sentencing guidelines range than the

Agreement. While the parties had stipulated to a three-level enhancement for Bossous' role as "a manager or supervisor of the criminal activity," the probation officer recommended a four-level enhancement for the defendant's role as "an organizer or leader of the criminal activity." The PSR calculated the amount owed by the defendant in restitution as $4,952,831.73.

In its Sentencing Memorandum, the Government recommended that the Court adopt the Agreement's three-level role enhancement rather than the PSR's four-level enhancement. Bossous' retained counsel, Mr. William Aronwald, also challenged the PSR's recommendation of a four-level enhancement for the defendant's role, and requested a non-guidelines sentence based on the defendant's attempted cooperation with the Government and her family circumstances.

At sentencing on August 27, 2010, the Court accepted the Agreement's three-level role adjustment, finding that it reflected a more "nuanced view" of the defendant's role in the offense than the four-level adjustment found in the PSR. The Court confirmed that the defendant and her attorney had reviewed and discussed the PSR and, inter alia, did not contest its calculation of restitution. After identifying the parties' sentencing submissions and hearing from counsel and the defendant, the Court imposed principally a term of imprisonment of 70 months and an obligation to pay restitution in the amount

of $4,952,831.73. Bossous was advised of her right to appeal, but did not appeal her conviction or sentence.[1]

DISCUSSION

In her petition, Bossous does not request an opportunity to withdraw her plea of guilty or suggest that she would not have pleaded guilty but for her attorney's ineffective assistance. Nor does she challenge the knowing and voluntary nature of her decision to plead guilty. Instead, Bossous seeks to be resentenced.

Bossous makes three arguments in her petition in support of her claim that her attorney provided ineffective assistance to her in connection with her sentence. She contends that her attorney should have contested the sentencing guidelines' adjustments for the amount of loss and number of victims and should have objected to the amount of restitution imposed at sentence. The first two arguments are foreclosed by the waiver contained in the Agreement. The final argument is rejected on the merits.

[1] Bossous asserts in passing in her petition that her attorney did not advise her of her grounds for an appeal or of her right to appeal. As the record from the sentencing proceeding reflects that she was advised of her right to appeal, this issue will not be addressed further. Bossous does not assert that she asked her attorney to file an appeal.

A. Waiver of Collateral Attack Rights

A defendant's waiver of the right to appeal or collaterally attack a sentence within or below a stipulated guidelines range is presumptively enforceable. United States v. Arevalo, 628 F.3d 93, 98 (2d Cir. 2010); Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) (per curiam). The Second Circuit has explained the importance of enforcing such waivers:

> In no circumstances . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.

United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 2003) (per curiam). In contrast, a claim of ineffective assistance of counsel will survive a waiver if the claim relates to advice counsel gave with regard to entering the plea or the process by which the defendant agreed to plead guilty. See Parisi v. United States, 529 F.3d 134, 138-39 (2d Cir. 2008).

The presumption of enforceability of a plea agreement's waiver of rights is overcome only in a narrow category of cases. United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011). A waiver of the right to challenge a sentence will not be valid where "the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on

constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence." United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000).

In determining that a waiver of the right to file a Section 2255 petition was knowing and voluntary courts have considered factors such as: (1) whether the petitioner signed the plea agreement; (2) whether the petitioner stated during the plea colloquy that she had read and understood the plea agreement; (3) whether the petitioner, having been advised of the right to appeal, failed to take a direct appeal from the sentence; and (4) whether the petitioner failed to assert in her Section 2255 petition that she did not understand the plea agreement's waiver clause. See Garcia-Santos, 273 F.3d at 508. Where there has been a knowing and valid waiver, an ineffective assistance of counsel claim addressed to the correctness of the sentence imposed is not viable. See United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998); see also United States v. Wilkes, 20 F.3d 651, 653-54 (5th Cir. 1994) (petitioner's argument that he received ineffective assistance of counsel when his attorney failed to object to alleged inaccuracies in the PSR was barred by § 2255 waiver contained in plea agreement). Thus, a claim that an attorney was "ineffective at sentencing" is subject to a

plea agreement's waiver of the right to attack a sentence. Garcia-Santos, 273 F.3d at 509.

Two of Bossous's claims, which essentially challenge the term of imprisonment imposed at sentencing, are barred by the Agreement's waiver. The Agreement contained an explicit waiver of the right to challenge any sentence below 87 months' imprisonment through a Section 2255 petition. At her plea, Bossous acknowledged that she had entered the Agreement knowingly and voluntarily.

Bossous contends that she did not understand that the Agreement's waiver barred her from pursuing her claims regarding the guidelines calculation in her Section 2255 petition. She asserts that she did not understand the term "collaterally attack." But, neither the Agreement, nor the Court in its colloquy with the defendant during her plea allocution, used the term "collaterally attack." The Agreement's waiver barred litigation through "Section 2255" and the Court explained during the proceeding at which the defendant pleaded guilty, that by entering the Agreement Bossous had agreed "that you will not appeal or challenge or litigate" any sentence below 87 months' imprisonment. This leaves no doubt that Bossous voluntarily and knowingly waived her right to contest the sentence of 70 months' imprisonment through this petition.

Bossous' second argument is that the waiver should not be enforced because she received ineffective assistance of counsel. She asserts that her retained counsel was unfamiliar with mortgage fraud; that he failed to object to either the stipulation of losses in the Agreement or calculation of losses in the PSR; that he failed to argue that extraneous factors justified a reduction in the guidelines calculation of loss; that he failed to challenge the number of victims of Bossous' mortgage fraud scheme described in either the Agreement or PSR; and he failed to review sentencing submissions with her and to send them to the correct address.

This attack on the quality of representation she received in connection with sentencing issues is inadequate to avoid the Agreement's waiver. To avoid the waiver, the petitioner must contend that she received ineffective assistance of counsel in entering her plea and Bossous does not. Djelevic, 161 F.3d at 107. See also Parisi, 529 F.3d at 139; Garcia-Santos, 273 F.3d at 508-09.

B. Ineffective Assistance of Counsel

Even if petitioner's ineffective assistance of counsel claims are liberally construed as an attack on the validity of the process by which the waiver of her right to appeal was procured, she has failed to demonstrate a violation of her Sixth Amendment rights. To prove ineffective assistance of counsel,

petitioner must show that: (1) her counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) she was prejudiced by her counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687-96 (1984). In assessing counsel's performance a court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990). In particular, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91. The second prong, prejudice, requires a showing that, but for counsel's deficient performance, there exists a reasonable probability that the result would have been different. United States v. Torres, 129 F.3d 710, 716 (2d Cir. 1997).

There are only two of the issues raised by Bossous that could be construed as criticism of her attorney in connection

with the plea negotiations. Bossous takes issue with two sentencing guidelines enhancements in the Agreement she executed in advance of her plea of guilty. These are the eighteen-level enhancement for the amount of loss and the two-level enhancement for the existence of ten or more victims.

1. Calculation of Loss

In the Agreement, petitioner stipulated that she had caused more than $2,500,000 but less than $7,000,000 of loss to the victims of the fraud. Bossous contends that the Government incorrectly calculated the amount of loss by failing to subtract from the face values of the fraudulently obtained loans, the value of the collateral that the financial institutions had recovered or could expect to recover. This contention fails to state a claim for ineffective assistance of counsel.

First, factual stipulations in plea agreements “are bargaining chips in the hands of defendants. . . . Such bargaining chips can be exchanged for concessions from the other party only if they are enforceable” United States v. Granik, 386 F.3d 404, 412 (2d Cir. 2004). In this case, it would have been a reasonable strategic decision to stipulate to an amount of loss of at least $2,500,000. Bossous does not dispute that the face value of the fraudulent loans was $13,517,486, that she participated in $11,645,910 worth of those loans, and that two of the six defrauded banks reported that they had suffered

losses of $4,942,831. In these circumstances, it was reasonable for defense counsel to negotiate an agreement with the Government that acknowledged that Bossous was responsible for a loss that exceeded $2,500,000. After all, a sentencing court is only required to make a reasonable estimate of loss in calculating a sentencing guidelines range. U.S.S.G. 2B1.1 App. Note 3(C). Bossous has failed to demonstrate that a decision to negotiate a loss figure of $2,500,000 fell below the range of reasonable professional assistance, or that she suffered any prejudice from such a decision.

2. Number of Victims

In the Agreement, the parties stipulated that Bossous had injured ten or more victims. In essence, Bossous questions whether there were as many as ten victims. Arguably, she is asserting that her attorney should have required the Government to identify the ten victims when negotiating the Agreement. This claim of ineffective assistance fails as well.

At various points in her prosecution the Government or the Probation Department identified by name six financial institutions that were defrauded by the defendant's scheme. They also referred to the fact that "many" individual straw buyers had their credit ruined as a result of the scheme[2] and

---

[2] The parties do not address whether a harm to a person's credit rating is a financial loss or only a reputational loss. It will

that owners of property suffered losses. Bossous questions whether sellers of property can be considered victims since they were paid for their property. Nonetheless, in these circumstances, defense counsel could reasonably have concluded that a stipulation to a two-level enhancement for injury to ten or more victims was a reasonable course of action.

Bossous obtained several benefits from the Agreement. First, and perhaps foremost, by executing the Agreement the defendant narrowed the areas of dispute with the Government over the effect of her criminal conduct and could ask the Court to focus its attention on her equitable arguments for a reduced sentence. Moreover, in the Agreement the Government took the position that Bossous' role enhancement should be for three and not four levels and that she was entitled to a three-level adjustment for acceptance of responsibility. It also agreed to dismiss the open counts against the defendant at the time of sentence. And of course, the Agreement formally recognized Bossous' right to seek a non-guidelines sentence premised on the factors set forth in 18 U.S.C. § 3553(a), a provision on which her attorney relied in his sentencing submissions. Bossous has not shown that her attorney was ineffective in connection with

---

be assumed for purposes of this Opinion that it is only a reputational injury and does not qualify the person as a victim.

the negotiation of the Agreement, and this claimed violation of her Constitutional rights fails as well.

C. Restitution

Lastly, Bossous claims that the restitution she was ordered to pay, in the amount of $4,952,831.73, was calculated incorrectly and violates the Victim and Witness Protection Act. The conspirators obtained over 40 home mortgage loans with a face value of over $13,000,000. Bossous participated in procuring loans with a face value of over $11,000,000. There were at least six institutions that issued these mortgages, but at the time of sentencing, the PSR calculated the amount owed in restitution based on the losses sustained by only two banks. The PSR found that "[r]estitution in the amount of at least $4,952,831.73 is owed by the defendant and her co-conspirators." The PSR specified that $2,975,804.95 was owed to Bank of America, and $1,977,026.78 was owed to Chase Bank.

A restitution award is a noncustodial sentence and cannot be challenged under a petition pursuant to 28 U.S.C. § 2255. In consequence, this claim must be denied. Kaminski v. United States, 339 F.3d 84, 85 n.1, 87 (2d Cir. 2003).

Bossous cites United States v. Kristl, 437 F.3d 1050 (10th Cir. 2006). That case is inapposite. It addresses the standard of review applied by a Court of Appeals to a district court's erroneous calculation of the sentencing guidelines range, not an

allegedly erroneous calculation of a restitution award. Id. at 1054–55.

In any event, Bossous has not shown that there was any error in the calculation of restitution. The PSR calculated a conservative amount Bossous owed in restitution. Bossous was advised at her plea to read the PSR carefully and point out any error in it to her attorney before sentencing. Bossous read the PSR prior to her sentencing, and made no objection at sentencing to the calculation. She does not suggest that she saw any error at that time and does not identify any errors in the calculation of restitution owed to the two identified victims in the PSR. She has therefore shown no basis to find any error in the imposition of the obligation to pay restitution. Of course, in the event either Chase Bank or Bank of America has been able to reduce its losses due to recoveries in foreclosure proceedings or otherwise, the amount that Bossous will owe in restitution to these two institutions will be correspondingly reduced. United States v. Oladimeji, 463 F.3d 152, 160 (2d Cir. 2006).

CONCLUSION

Bossous' motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255 is denied. I further decline to issue a certificate of appealability. The petitioner has not made a substantial showing of a denial of a federal right and appellate review is, therefore, not warranted.

Tankleff v. Senkowski, 135 F.3d 235, 241 (2d Cir. 1998); Rodriquez v. Scully, 905 F.2d 24, 24 (2d Cir. 1990). The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 444 (1962). The Clerk of Court shall dismiss this petition and close the case.

SO ORDERED:

Dated: New York, New York
September 26, 2012

DENISE COTE
United States District Judge

COPIES SENT TO:

Marlene Bossous
Reg # 62777-054
FPC Alderson - Federal Prison Camp
Glen Ray Road Box-A
Alderson, VA 24910